# EXHIBIT B

Westlaw.

810 N.E.2d 589            Page 1
348 Ill.App.3d 976, 810 N.E.2d 589, 284 Ill.Dec. 799
**(Cite as: 348 Ill.App.3d 976, 810 N.E.2d 589, 284 Ill.Dec. 799)**

▶People ex rel. Waller v. Harrison
Ill.App. 2 Dist.,2004.

Appellate Court of Illinois,Second District.
The PEOPLE ex rel. Michael J. WALLER and James E. Ryan, Plaintiff-Appellee,
v.
J. HARRISON, as Trustee under Trust No. 410, Defendant-Appellant.
**No. 2-03-0413.**

May 21, 2004.
Rehearing Denied June 18, 2004.

**Background:** State's attorney and attorney general brought action against trustee alleging that property that trustee owned, which appeared to be abandoned, contained tires, drums of petroleum products, and other waste in violation of state Environmental Protection Act and regulations promulgated under it. The Circuit Court, Lake County, David M. Hall, Margaret J. Mullen, and Barbara Gilleran Johnson, JJ., entered default judgment against trustee, enjoining him from future violations of Act, ordering him to clean up site, and fining him $79,000. Trustee appealed.

**Holdings:** The Appellate Court, McLaren, J., held that:
(1) state properly complied with statute authorizing substituted service, and
(2) sufficient evidence supported finding that state was diligent in attempting to personally serve trustee.

Affirmed.

Kapala, J., filed dissenting opinion.

West Headnotes

**[1] Appeal and Error 30 893(1)**

30 Appeal and Error
   30XVI Review
      30XVI(F) Trial De Novo
         30k892 Trial De Novo
            30k893 Cases Triable in Appellate Court
               30k893(1) k. In General. Most Cited Cases
An appellate court reviews pure questions of law under a de novo standard of review, without deference to a circuit court concerning the content of any rule of law relevant to the proceeding.

**[2] Appeal and Error 30 1012.1(5)**

30 Appeal and Error
   30XVI Review
      30XVI(I) Questions of Fact, Verdicts, and Findings
         30XVI(I)3 Findings of Court
            30k1012 Against Weight of Evidence
            30k1012.1 In General
               30k1012.1(5) k. Manifest Weight. Most Cited Cases
A circuit court's finding of fact is entitled to deference by an appellate court and may be reversed only if it is contrary to the manifest weight of the evidence.

**[3] Appeal and Error 30 842(9)**

30 Appeal and Error
   30XVI Review
      30XVI(A) Scope, Standards, and Extent, in General
         30k838 Questions Considered
            30k842 Review Dependent on Whether Questions Are of Law or of Fact
               30k842(9) k. Mixed Questions of Law and Fact. Most Cited Cases
Mixed questions of fact and law, which involve application of law to a particular set of facts, are subject to review under the clearly erroneous standard, affording a circuit court less deference than for questions of fact.

**[4] Appeal and Error 30 1008.1(5)**

30 Appeal and Error
   30XVI Review
      30XVI(I) Questions of Fact, Verdicts, and Findings
         30XVI(I)3 Findings of Court

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

810 N.E.2d 589 Page 2
348 Ill.App.3d 976, 810 N.E.2d 589, 284 Ill.Dec. 799
**(Cite as: 348 Ill.App.3d 976, 810 N.E.2d 589, 284 Ill.Dec. 799)**

        30k1008 Conclusiveness in General
           30k1008.1 In General
               30k1008.1(5) k. Clearly Erroneous Findings. Most Cited Cases
Under the clearly erroneous standard of review, a finding by a trial court may be reversed only if, after careful examination of record in light of applicable rule of law, a reviewing court is left with the definite and firm conviction that the finding is in error.

**[5] Environmental Law 149E &#x1F5DD;674**

149E Environmental Law
    149EXIII Judicial Review or Intervention
        149Ek674 k. Process or Notice. Most Cited Cases
State properly complied with statute authorizing substituted service, in action it brought against trustee alleging violations of Environmental Protection Act; although affidavit attached to motion for order authorizing alternative service did not precisely track language of statute requiring affidavit to state extent of investigation and reasons why service was impractical, trial court could infer from affidavit that despite attempted service at three different home addresses as well as county courthouse, trustee could not be located, and thus, affidavit was not insufficient. S.H.A. 415 ILCS 5/5 et seq.; 735 ILCS 5/2-203, 2-203.1.

**[6] Judgment 228 &#x1F5DD;17(9)**

228 Judgment
    228I Nature and Essentials in General
        228k17 Process or Notice to Sustain Judgment
            228k17(9) k. Defective Process or Service. Most Cited Cases

**Process 313 &#x1F5DD;48**

313 Process
    313II Service
        313II(A) Personal Service in General
            313k48 k. Nature and Necessity in General. Most Cited Cases
If a party is not properly served with a summons, a court has no personal jurisdiction over him or her and any judgment entered against that party is void.

**[7] Environmental Law 149E &#x1F5DD;674**

149E Environmental Law
    149EXIII Judicial Review or Intervention
        149Ek674 k. Process or Notice. Most Cited Cases
Sufficient evidence supported finding that state was diligent in attempting to personally serve trustee, in action it brought against trustee alleging violations of Environmental Protection Act; although trustee complained that simple failure to serve him at two "viable" addresses and one nonexistent one was insufficient, state showed that it had exhausted all of its leads in its attempt to locate trustee, and trustee did not suggest additional steps state could have taken to find him, and thus, state adequately demonstrated its diligence in attempting to serve trustee personally. S.H.A. 415 ILCS 5/5 et seq.; 735 ILCS 5/2-203, 2-203.1.

**\*\*590\*977\*\*\*800**J. Scott Myers, David E. Morgans, Myers, Miller, Standa & Krauskopf, Chicago, for J. Harrison.
Michael J. Waller, Lake County State's Attorney, Lisle A. Stalter, Assistant State's Attorney, Waukegan, Gary S. Feinerman, Solicitor General, Chicago, for People ex rel. Michael J. Waller.
**\*\*591\*\*\*801**Lisa Madigan, Attorney General, Brett E. Legner, Assistant Attorney General, Chicago, for People ex rel. James E. Ryan.
Justice McLAREN delivered the opinion of the court:
The State, represented by Lake County State's Attorney Michael J. Waller and then Attorney General James E. Ryan, filed a complaint against defendant, J. Harrison, as trustee under trust No. 410, alleging that he violated various provisions of the Illinois Environmental Protection Act (the Act) (415 ILCS 5/5 *et seq.* (West 2000)) and the administrative regulations of the Pollution Control Board (35 Ill. Adm.Code §§ 807, 810, 848 (2000)). After several attempts at personal service failed, the State sought and received the court's permission to serve defendant by publication. Defendant did not appear and the court entered a default judgment. Defendant then appeared and moved to vacate the judgment. The court denied the motion. Defendant appeals,**\*978** contending that the State did not comply with the requirements for alternative service by special order of the court or for service by publication because the affidavit accompanying the motion was insufficient. Defendant also contends that service by publication is available only in *in rem* actions while the fine that the court imposed is a personal judgment against him. Because the trial court's determination that the State complied

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

810 N.E.2d 589 Page 3
348 Ill.App.3d 976, 810 N.E.2d 589, 284 Ill.Dec. 799
**(Cite as: 348 Ill.App.3d 976, 810 N.E.2d 589, 284 Ill.Dec. 799)**

with the requirements for service by special order of the court was not clearly erroneous, we affirm.

The State's complaint alleged that defendant, as trustee, owned property at 38101 N. Sheridan Road in Beach Park. The property, which appeared to be abandoned, contained tires, drums of petroleum products, and other waste in violation of the Act and regulations promulgated under it.

The State made several attempts to serve defendant personally or by abode service. The original summons, directed to an address in Mundelein, was returned unserved. An alias summons directed to an address in Tower Lakes was similarly returned unserved. A third alias summons directed to defendant at the Lake County courthouse also was not served. An attempt to serve defendant at an address in Cedar Grove, Wisconsin, was also unsuccessful.

The State then filed a motion for an order authorizing alternative service. The motion does not state specifically which section of the Code of Civil Procedure (the Code) (735 ILCS 5/1-101 *et seq.* (West 2000)) it invokes. The motion alleges that "The Plaintiff has made diligent inquiry as to the location of the Defendant, and reasonable efforts to make service have been unsuccessful."

Attached to the motion was the affidavit of Assistant State's Attorney Lisle Stalter, which alleged the following. Stalter reviewed records in the Lake County recorder's office to learn who purchased the property. This information provided her with a post office box in Mundelein, which she traced to a street address. A Lake County sheriff's deputy attempted to serve defendant at that address, but returned the summons unserved. A colleague then gave Stalter an address for defendant in Cedar Grove, Wisconsin. However, an attempt at service at that address was returned unserved. She found another address in Tower Lakes/Barrington at which to serve defendant. However, the summons was returned unserved as no such address existed. Stalter averred that, "Although a diligent effort has been made, no other information has been found as to where J. Harrison can be personally served."

**\*\*592\*\*\*802** The trial court issued an order stating that "Plaintiff's Motion for service by publication is granted as Plaintiff has shown due diligence in attempting to obtain personal service." The court also ordered that **\*979** defendant be served by regular mail. Later, Stalter filed a second affidavit that was essentially the same as the first, but included the specific addresses at which service was attempted. The State provided publication notice and also mailed copies of the complaint to the addresses at which it had attempted service. Only the envelope sent to the Tower Lakes address was returned.

Defendant did not appear and the trial court entered a default judgment. It enjoined defendant from future violations of the Act, ordered him to clean up the site, and fined him $79,000. Defendant then appeared and moved to quash the service and vacate the judgment. The trial court denied the motion and defendant timely appeals.

The parties assert that the standard of review of whether the trial court had personal jurisdiction over defendant is *de novo.* Although numerous recent cases contain this statement of the standard of review (see, *e.g., White v. Ratcliffe,* 285 Ill.App.3d 758, 764, 221 Ill.Dec. 113, 674 N.E.2d 906 (1996)), it is not necessarily correct. Rather, as in other cases, the appropriate standard depends on how the trial court decided the issue. We note that *White* cites *State Bank v. Thill,* 113 Ill.2d 294, 308-09, 100 Ill.Dec. 794, 497 N.E.2d 1156 (1986), for the proposition that whether the trial court obtained personal jurisdiction over the defendant should be reviewed *de novo.* Although *Thill* does not explicitly state a standard of review, the issue there was a legal one, so *de novo* review was appropriate. However, *Thill* does not state a general rule that anytime personal jurisdiction is at issue, the standard of review is *de novo.*

In *Gaidar v. Tippecanoe Distribution Service, Inc.,* 299 Ill.App.3d 1034, 234 Ill.Dec. 150, 702 N.E.2d 316 (1998), the court held that the "manifest weight of the evidence" standard of review applied to jurisdictional issues where the trial court heard courtroom testimony, but that a *de novo* standard applied when the trial court heard no testimony but decided the jurisdictional issue solely on the basis of documentary evidence. *Gaidar,* 299 Ill.App.3d at 1039-40, 234 Ill.Dec. 150, 702 N.E.2d 316; see also *Spartan Motors, Inc. v. Lube Power, Inc.,* 337 Ill.App.3d 556, 559-60, 272 Ill.Dec. 74, 786 N.E.2d 613 (2003). We agree with this analysis to a point. Although in *Gaidar* and *Spartan Motors* the issue was whether the defendants were

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

810 N.E.2d 589 Page 4
348 Ill.App.3d 976, 810 N.E.2d 589, 284 Ill.Dec. 799
**(Cite as: 348 Ill.App.3d 976, 810 N.E.2d 589, 284 Ill.Dec. 799)**

doing business in Illinois for purposes of the long-arm jurisdiction statute (735 ILCS 5/2-209 (West 2000)) rather than whether the defendants were properly served with the summons, this distinction is irrelevant. The critical fact is whether the trial court heard disputed evidence and made factual findings, rather than the substantive issue that the court considered. Here, the court made such findings, and the issue was a mixed question of law and fact. Therefore, we apply the clearly erroneous standard of review.

[1][2][3][4] "This court reviews pure questions of law under a *de novo* standard of review, without deference to the circuit court concerning ***980** the content of any rule of law relevant to this proceeding. [Citation.] The circuit court's finding of fact, however, is entitled to deference by this court and may be reversed only if it is contrary to the manifest weight of the evidence. [Citation.] Mixed questions of fact and law, which involve the application of law to a particular set of facts, are subject to review under the clearly erroneous**593****803** standard, affording the circuit court less deference than for questions of fact. [Citation.] Under the clearly erroneous standard of review, a finding by the trial court may be reversed only if, after careful examination of the record in light of the applicable rule of law, the reviewing court is left with the 'definite and firm conviction' that the finding is in error. [Citation.]" Zebra Technologies Corp. v. Topinka, 344 Ill.App.3d 474, 480-81, 278 Ill.Dec. 860, 799 N.E.2d 725 (2003).

[5][6] Defendant first claims that the trial court did not acquire jurisdiction over him because the State did not comply with the statute authorizing substituted service. If a party is not properly served with a summons, the court has no personal jurisdiction over him or her and any judgment entered against that party is void. Mugavero v. Kenzler, 317 Ill.App.3d 162, 164, 251 Ill.Dec. 46, 739 N.E.2d 979 (2000).

Generally, the Code requires that an individual defendant be served either in person or by abode service-by leaving a copy of the summons with a family member above the age of 13. 735 ILCS 5/2-203(a)(1), (a)(2) (West 2000). However, section 2-203.1 of the Code provides that if service upon an individual defendant is impractical, a plaintiff may request that the court allow "a comparable method of service." 735 ILCS 5/2-203.1 (West 2000). The motion must be accompanied by an affidavit "stating the nature and extent of the investigation made to determine the whereabouts of the defendant and the reasons why service is impractical under items (1) and (2) of subsection (a) of Section 2-203, including a specific statement showing that a diligent inquiry as to the location of the individual defendant was made and reasonable efforts to make service have been unsuccessful." 735 ILCS 5/2-203.1 (West 2000).

Defendant complains that Stalter's affidavit attached to the motion was insufficient because it did not state "the reasons why service [was] impractical" pursuant to section 2-203 or "a specific statement showing that a diligent inquiry as to the location of the individual defendant was made and reasonable efforts to make service have been unsuccessful." We disagree.

While a party requesting an alternative means of service must strictly comply with section 2-203.1, its requirements for the affidavit are not magic words that must be slavishly copied before ***981** alternative service will be permitted. Here, although Stalter's affidavit did not state that "service under section 2-203 is impractical because * * *," it is clear from the affidavit as a whole that service was impractical because defendant could not be found. Stalter described her efforts to find defendant, which led to attempted service at three different home addresses as well as the county courthouse. The trial court could clearly infer from this that defendant could not be located and, therefore, personal or substituted service was impractical.

Moreover, Stalter's affidavit specifically states, "Although a diligent effort has been made, no other information has been found as to where J. Harrison can be personally served." This is substantially similar to the required statement that "a diligent inquiry as to the location of the individual defendant was made and reasonable efforts to make service have been unsuccessful" (735 ILCS 5/2-203.1 (West 2000)). We will not hold the affidavit insufficient because it did not track the statutory language precisely.

[7] Defendant contends that the affidavit does not demonstrate that the State was in fact diligent in attempting to personally serve him. He complains that the **594*****804** simple failure to serve defendant at two "viable" addresses and one nonexistent one was insufficient. Again, we disagree.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

810 N.E.2d 589                                                                                                                   Page 5
348 Ill.App.3d 976, 810 N.E.2d 589, 284 Ill.Dec. 799
**(Cite as: 348 Ill.App.3d 976, 810 N.E.2d 589, 284 Ill.Dec. 799)**

Stalter's affidavit describes efforts to find defendant at three addresses. Stalter averred that she checked the records in the Lake County recorder's office to find out who purchased the Beach Park property. This effort provided her with a post office box, which she in turn traced to a street address in Mundelein. However, a summons directed to that address was returned unserved.

We note that the return of service states that Barbara Shissle claimed to live alone at that address and that a car in the driveway was registered to her. In other words, defendant simply did not live at that address. He does not explain why further attempts to serve him there would have been more successful than the first.

The affidavit further states that Stalter obtained from a colleague an address in Cedar Grove, Wisconsin. A summons was issued for that address but it, too, was returned unserved. Stalter then discovered another possible address for defendant in Barrington/Tower Lakes. The Lake County sheriff's department tried four times to serve defendant there but could not locate the address. Nothing in the record suggests that the State was not diligent in attempting personal service.

Interestingly, while defendant criticizes the State's efforts to find him, he does not argue that he *could* have been found with a diligent inquiry. In the analogous situation of a motion for service by publication under section 2-206 of the Code ([735 ILCS 5/2-206](#)) (West *982 2000)), courts require a defendant challenging service to file a counteraffidavit stating that upon reasonable inquiry he or she could have been found. The plaintiff must then produce evidence showing that it conducted a due inquiry. See [First Bank & Trust Co. of O'Fallon v. King, 311 Ill.App.3d 1053, 244 Ill.Dec. 646, 726 N.E.2d 621 (2000)](#). Here, defendant's motion to quash did not suggest how he could have been found.

*Mugavero,* on which defendant principally relies, is easily distinguishable. There, the plaintiff's motion did not include any affidavit at all. To the extent that the court could rely on a previously filed affidavit, it showed that plaintiff conducted virtually *no* inquiry to learn the defendant's whereabouts. [Mugavero, 317 Ill.App.3d at 165, 251 Ill.Dec. 46, 739 N.E.2d 979](#).

In [In re Marriage of Schmitt, 321 Ill.App.3d 360, 254 Ill.Dec. 484, 747 N.E.2d 524 (2001)](#), an affidavit showed that two detective agencies had been unable to serve the respondent, despite 11 attempts at his businesses, a bar, and the courthouse. The *Schmitt* court found that these efforts demonstrated due diligence. [Schmitt, 321 Ill.App.3d at 369, 254 Ill.Dec. 484, 747 N.E.2d 524](#). However, the court did not hold that such extraordinary efforts are always required.

Diligence must depend on the facts of the specific case. In particular, whether a party has been diligent does not depend upon the sheer number of attempts at service. Here, the State showed that it had exhausted all of its leads in its attempt to locate defendant. As noted, defendant does not suggest any additional steps the State could have taken. We are convinced that the statute does not require futile attempts to serve a defendant at an address where he does not live or at an address that does not exist. The State adequately demonstrated its diligence in attempting to serve defendant personally. Because of our resolution of this issue, we need not consider whether the State complied with the requirements of section 2-206 for service by publication or whether **595***805 such service is available only in *in rem* actions.

The dissent raises several points that deserve comment. First, the State presented evidence to the trial court below that the trial court accepted as sufficient to obtain service by publication. On appeal it is not the State but defendant who must establish that the trial court's determination is clearly erroneous. We do not believe that defendant has sustained his burden. Second, although the dissent sets forth alternate means of obtaining knowledge about the whereabouts of defendant, these alternate means are immaterial because defendant failed to establish that had they been attempted his whereabouts would have been made known. Third, the dissent sets forth the possible existence of certain facts that are neither in the record nor necessarily subject to judicial notice. See 284 Ill.Dec. at 806, 810 N.E.2d at 596 ("The business may have had organizational documents on file with the *983 Secretary of State's office."). Assuming, *arguendo,* that this was error, neither defendant nor the dissent establishes prejudice relative to the failure to review the Secretary of State's records. The dissent sets forth alternate or additional means to locate the whereabouts of any defendant in similar circumstances. We accept that there are viable

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:08-cv-01359   Document 10-3   Filed 05/05/2008   Page 7 of 9

810 N.E.2d 589                                                                                                    Page 6
348 Ill.App.3d 976, 810 N.E.2d 589, 284 Ill.Dec. 799
**(Cite as: 348 Ill.App.3d 976, 810 N.E.2d 589, 284 Ill.Dec. 799)**

alternatives, as cited by the dissent, which a trial court may consider in future cases wherein similar relief is sought. However, in this case, we are not swayed by the dissent's ultimate claim that the trial court's judgment is clearly erroneous and that defendant has established prejudicial error.

The judgment of the circuit court of Lake County is affirmed.

Affirmed.

GROMETER, J., concurs.
Justice KAPALA, dissenting:
I respectfully dissent because I do not believe that the State established that conventional service was impractical, nor do I believe that the publication by the State was comparable to service under section 2-203. I would reverse, vacate the default judgment, and remand this cause for further proceedings.

A motion under section 2-203.1 must be accompanied by an affidavit which demonstrates why service under section 2-203 is impractical. This affidavit must include a specific statement showing that (1) a "diligent inquiry" as to the location of the individual defendant was made and (2) "reasonable efforts" to make service have been unsuccessful. 735 ILCS 5/2-203.1 (West 2000). In my judgment, the State fails in both respects.

The original summons was directed to defendant at 566 Lomond Drive, Mundelein, Illinois. It was issued on June 21, 2001, and returned not found on June 29, 2001, by the Lake County sheriff, who noted that someone else was living at that address. A first alias summons was issued to defendant at 25313 W. Lake Shore Drive, Barrington/Tower Lakes, Illinois, on August 2, 2001, and returned not found on August 23, 2001, after four unsuccessful attempts to establish whether the address existed. A second alias summons, directed to the Lake County courthouse, was issued but subsequently expired without being served. Through undisclosed means, the State obtained a Wisconsin address for defendant. However, according to Assistant State's Attorney Stalter's affidavit, defendant was not served in Wisconsin. There is no sheriff's return from Wisconsin in the record, so we do not know if the process was not served in Wisconsin due to **\*984** lack of time, lack of personnel, deficiencies in the request, or some other reason. The **\*\*596\*\*\*806** total of Stalter's efforts to locate an address for defendant was limited to checking property and tax records and obtaining information about the Wisconsin address from a "colleague." No search of motor vehicle registration records was made. As far as we know, neither the person living in the house nor the neighbors of the Mundelein property were questioned as to defendant's whereabouts. Even though a letter addressed to the Barrington/Tower Lakes address came back with the notation "Forwarding Time Expired," no request was made of the post office for a current address. No one checked any databases for a telephone listing, city directory, or utility service. No one requested or authorized an investigative service to take steps to trace defendant.

The record discloses other leads that the State did not follow. The property in question was an amusement business with a go-cart track and batting cages. This we may easily infer from the record, which includes Lake County health department site inspections complete with color photographs of the signs at the entrance to the go-cart track. Consequently, the business may have had organizational documents on file with the Secretary of State's office. The business may have been registered with the Illinois Department of Revenue or the Department of Employment Security. The business may have had an assumed name certificate on file with the Lake County clerk's office. The business may have obtained an operating license from the Village of Beach Park, where the business was located. Yet no one checked with any of these governmental entities to uncover information as to the whereabouts of defendant. While the State apparently had some information that defendant might attend a court date in Lake County, and the second alias summons was directed to the Lake County courthouse, we do not know how the State came into possession of that information. The record does not reflect that the State searched the circuit clerk's records for any prior or pending legal proceedings. No one attempted to locate business associates of defendant or former employees of the business.

The periodic site inspections of the property by the Lake County health department show ongoing activity at the site. Grass was mowed. Refuse was still being dumped. There was a trailer moved onto the property, with a Missouri license plate affixed to it. No one tried to determine who owned the trailer through tracing the license plate. Surveillance of the property would have

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

810 N.E.2d 589            Page 7
348 Ill.App.3d 976, 810 N.E.2d 589, 284 Ill.Dec. 799
**(Cite as: 348 Ill.App.3d 976, 810 N.E.2d 589, 284 Ill.Dec. 799)**

yielded the culprit who was doing the dumping or the Samaritan who was doing the mowing or, at the least, a license plate number of a vehicle or vehicles going into and out of the property. It is important to underscore that the State commanded **\*985** the investigative resources of the Lake County State's Attorney's office, the Lake County sheriff's department, and the Illinois Attorney General's office.

For these reasons, I disagree with the majority's conclusion that the State conducted a diligent inquiry. To the contrary, its inquiry was superficial and, under these circumstances, its efforts to effect service were not reasonable. I believe that Stalter's affidavits in support of her invocation of section 2-203.1 actually aver nothing more than what was stated in the affidavit in *Mugavero v. Kenzler,* 317 Ill.App.3d 162, 165, 251 Ill.Dec. 46, 739 N.E.2d 979 (2000), merely that defendant moved from the address on the summons. That is the only information imparted by her two affidavits. In Mugavero, this court refused to allow court-ordered service on the basis of such a representation. *Mugavero,* 317 Ill.App.3d at 165-66, 251 Ill.Dec. 46, 739 N.E.2d 979. The majority's holding in this case, that personal service was impractical **\*\*597\*\*\*807** because defendant was not found, eviscerates the requirement of diligence in trying to find him. I believe this sets a wrong precedent.

Moreover, the majority's opinion applies the wrong standard of review. Here, the trial court heard no disputed evidence and made no findings of fact. The State presented an affidavit that was not challenged at the time the trial court entered the order allowing special service under section 2-203.1. Generally, the manifest weight of the evidence standard of review applies if the trial court heard courtroom testimony, but a *de novo* standard applies when the trial court heard no testimony and ruled solely on the basis of documentary evidence. *Rosenthal-Collins Group, L.P. v. Reiff,* 321 Ill.App.3d 683, 687, 254 Ill.Dec. 783, 748 N.E.2d 229 (2001). When the trial court rules on the legal sufficiency of an affidavit, we review *de novo* the trial court's ruling (*Jackson v. Graham,* 323 Ill.App.3d 766, 774, 257 Ill.Dec. 330, 753 N.E.2d 525 (2001)), giving no deference to the trial court's decision. See *Von Meeteren v. Sell-Sold, Ltd.,* 274 Ill.App.3d 993, 996, 211 Ill.Dec. 115, 654 N.E.2d 577 (1995). The majority cites *Zebra Technologies Corp. v. Topinka,* 344 Ill.App.3d 474, 278 Ill.Dec. 860, 799 N.E.2d 725 (2003), in support of its position that the clearly erroneous standard applies to our facts. However, in *Zebra* the trial court took three days of testimony in a bench trial, in which it weighed the credibility of the witnesses and made findings of fact based upon the evidence it heard. *Zebra,* 344 Ill.App.3d at 481-83, 278 Ill.Dec. 860, 799 N.E.2d 725. In our case, no one disputed the efforts the State made to locate defendant or the averments in the State's affidavit. Indeed, taking everything the State says it did as true, these efforts are insufficient to meet the requirements for special court-ordered service. I believe the correct standard of review is *de novo.*

Furthermore, I disagree that defendant has the burden to show that upon reasonable inquiry he could have been found. **\*986***First Bank & Trust Co. of O'Fallon v. King,* 311 Ill.App.3d 1053, 244 Ill.Dec. 646, 726 N.E.2d 621 (2000), upon which the majority relies for this proposition, is a Fifth District Appellate Court case that cites no authority for the rule it announced, and we should decline to follow it. Notwithstanding, the majority has misapplied *King. King* shifted the burden to the defendant only "[o]nce the Bank filed the affidavit pursuant to the language used in the statute." *King,* 311 Ill.App.3d at 1057, 244 Ill.Dec. 646, 726 N.E.2d 621. As demonstrated in my discussion above, the State's affidavit in support of the motion for service by publication did not meet the substantive requirements of section 2-203.1. Consequently, I believe the majority errs in applying *King.*

Significantly, this court considered the sufficiency of the affidavits required by section 2-203.1 in *Mugavero* and *In re Marriage of Schmitt,* 321 Ill.App.3d 360, 254 Ill.Dec. 484, 747 N.E.2d 524 (2001), and we did not shift the burden to the defendant in either of those cases. In *Mugavero,* we reversed the trial court's ruling that service was made under section 2-203.1 based solely upon our *de novo* determination that the plaintiff's affidavit was insufficient. *Mugavero,* 317 Ill.App.3d at 164-65, 251 Ill.Dec. 46, 739 N.E.2d 979. We upheld the plaintiff's affidavit in *Schmitt* without first requiring the defendant to demonstrate that upon reasonable inquiry he could have been found. *Schmitt,* 321 Ill.App.3d 360, 254 Ill.Dec. 484, 747 N.E.2d 524. I believe that our approach in the instant case departs from sound precedents we have already established.

Section 2-203.1 requires that the court-ordered

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

810 N.E.2d 589 Page 8
348 Ill.App.3d 976, 810 N.E.2d 589, 284 Ill.Dec. 799
**(Cite as: 348 Ill.App.3d 976, 810 N.E.2d 589, 284 Ill.Dec. 799)**

method of service be comparable **\*\*598\*\*\*808** to personal or abode service. 735 ILCS 5/2-203.1 (West 2000). I do not believe that publication, coupled with mailing, as here, is comparable service unless the plaintiff can show that absolutely no other method is available under the circumstances. Although defendant challenged the method of service, the majority does not address this issue. The purpose of service is to give notice to those whose rights or immunities are about to be affected by the proposed action. Zilinger v. Allied American Insurance Co., 957 F.Supp. 148, 150 (N.D.Ill.1997). Under Illinois law, every defendant in an action filed against him is entitled to the best possible notice of the pending suit. Fleet Mortgage Corp. v. Bryant, No. 88 C 1684, 1988 WL 135474 (N.D.Ill.1988) (Memorandum Op.). Service by publication is a " 'concession of the law to hard circumstances of necessity' "(*Fleet,* slip op. at 1, quoting Graham v. O'Connor, 350 Ill. 36, 40, 182 N.E. 764 (1932)), " 'and the law makes this concession grudgingly' "(*Fleet,* slip op. at 1, quoting Empire of America v. Brown, No. 85 C 05067, 1986 WL 3034, slip op. at 1 (N.D.Ill. February 28, 1986)). The concession should not be made, and publication should not stand in the stead of personal service, where there are alternative methods. Had the State been diligent in its inquiry, it might have located an employee, an employer, a relative, an attorney, a friend, or a neighbor **\*987** upon whom service could have been made in the event defendant's whereabouts remained unknown. I read our decision in *Schmitt* as preferring that service be made on someone who has a relationship with the defendant, and who is reasonably likely to advise the defendant of the service if that method is at all possible. I believe that section 2-203.1 should be used only in extraordinary circumstances such as those that existed in *Schmitt,* where the defendant was consciously evading service. Schmitt, 321 Ill.App.3d at 362, 254 Ill.Dec. 484, 747 N.E.2d 524. Otherwise, mere difficulty, rather than impracticality, in effecting personal service will allow court-ordered service under section 2-203.1. Here, there was evidence that defendant, as trustee, owned the subject property. There was evidence of activity at the property. Publication with a mailing to defendant should have been augmented with posting by affixing the summons and complaint to the property, coupled with personal service or mailings to the associates of defendant. In my opinion, these measures would have been far more likely to notify defendant of the pending procedures than a mailing to defendant with publication in the Pioneer Press. I believe that the majority's opinion weakens the safeguards that the legislature intended to put in place when it enacted section 2-203.1.

Ill.App. 2 Dist.,2004.
People ex rel. Waller v. Harrison
348 Ill.App.3d 976, 810 N.E.2d 589, 284 Ill.Dec. 799

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.